DELAWARE STATE HOSPITAL, a facility of and for and on Behalf of the DIVISION OF ALCOHOLISM, DRUG ABUSE AND MENTAL HEALTH, OF the DEPARTMENT OF HEALTH AND SOCIAL SERVICES, State of Delaware, Petitioner,

v.

Margaret MORRIS, Respondent.

Superior Court of Delaware, New Castle County.

Submitted: Dec. 30, 1987.
Decided: Jan. 21, 1988.

Robert B. Walls, Jr., Wilmington, for petitioner.

Donn Devine, Wilmington, for respondent.

TAYLOR, Judge.

This is an action pursuant to 16 *Del.C.* Ch. 50 for the involuntary commitment of respondent. Two hearings have been held concerning respondent's mental condition and her need for confinement.

Respondent's attorney has moved for the Court to find that respondent does not present a real and present threat that she is likely to commit or suffer serious harm to herself or others if not provided immediate hospital care or treatment, as defined in 16 *Del.C.* § 5001(1). In pursuance of that proposed finding, respondent seeks a finding that respondent is unable to properly care for herself and make decisions relating to her care and is in need of the protec-

tion of a guardian of her person appointed under 12 *Del.C.* Ch. 39. The motion seeks to have the Court find this Court has no jurisdiction over the subject matter but that the Court transfer the proceedings to the Court of Chancery pursuant to 10 *Del. C.* § 1901.

At the initial hearing, Dr. Irfan Erdag, an examining psychiatrist, testified that he did not believe respondent was "dangerous in a premeditated way". At a subsequent hearing, Dr. Erdag testified that respondent did not have a functional illness but had suffered an organic change constituting a neurological condition. He further testified that respondent was not capable of making decisions for her care and needed to be confined. He further testified that she was in need of regular and frequent medication which could be provided for her by examination and treatment by a physician—not necessarily a psychiatrist—but that the physician could ascertain when her condition was such that she needed psychiatric attention. Further, the psychiatric treatment might be needed only once every two months.

This proceeding is governed by 16 *Del.C.* Ch. 50. Under § 5001(1), the following elements must be found in order to qualify a person for commitment: (1) that the person suffers from a mental disease or condition; (2) that the disease or condition requires the person to be observed and treated at a mental hospital for their own welfare; and (3) that the disease or condition either (a) renders the person unable to make responsible decisions with respect to hospitalization or (b) poses a real or present threat, based on manifest indications, that such person is likely to commit or suffer serious harm to herself or others ... if not given immediate hospital care or treatment. Respondent contends that petitioner has not established that respondent is within the coverage of that statute because the evidence does not show that respondent is suffering from a mental illness as that term is currently used in psychiatry and because respondent's disease or condition does not require her to be under observation and treatment by a psychiatrist at a mental hospital.

Dr. Erdag testified that respondent does not suffer from a mental disease but does suffer from a mental condition. The statutory definition of a mentally ill person includes a person suffering from a mental condition. 16 *Del.C.* § 5001(1).

The only element enumerated above which is arguable is the element that respondent's condition requires her to be observed and treated at a mental hospital for her own welfare. With respect to this element, Dr. Erdag testified that at the state hospital, respondent is in a locked area and that that sort of security is necessary for respondent's welfare. She does not require observation and treatment by a psychiatrist. She does require care and frequent compulsion to assure that she regularly takes the prescribed medicine. She requires frequent surveillance by a physician and treatment by a psychiatrist as the physician finds appropriate. The testimony was that this is the only non-criminal institution in this State where that type of secure custodial care is provided.

■ Respondent's attorney relys on *State v. Krol,* 68 N.J. 236, 344 A.2d 289 (1975) in support of the proposition that a person should not be committed unless the person is dangerous to herself or society. *Krol* held that in order to justify involuntary commitment "there be a substantial risk of dangerous conduct within the reasonably foreseeable future." *Krol,* 344 A.2d at 302. Applying that statute to this case, the respondent's history of walking away from the institution in a bewildered condition in an area of high traffic density, as has happened when respondent was at the Delaware Hospital for the Chronically Ill shortly before she was admitted to the state hospital, establishes the substantial likelihood of danger to respondent.

■ Respondent's attorney argues that the proper disposition of this case would be by the appointment of a guardian by the Court of Chancery pursuant to 12 *Del.C.* § 3914 which he contends would more adequately serve respondent's needs. Under § 5001(1), Respondent's attorney contends that 16 *Del.C.* Ch. 50 and 12 *Del.C.* § 3914

were enacted as mutually exclusive provisions intended to be used in the alternative depending on the condition of the incompetent person. The Court need not address that issue because the evidence establishes that the condition from which the respondent is suffering, which requires that she be compulsorily confined for her own safety, is such that she falls within the definition of "mentally ill person", i.e., that she suffers from a mental disease or condition which requires her to be observed and treated at a mental hospital for her own welfare and that she poses a real and present threat that she is likely to commit or suffer serious harm to herself if she is not given immediate hospital care. Based on the evidence presented, the type of closely supervised and confined care that respondent requires can only be provided at the Delaware State Hospital, a mental health facility. Therefore, commitment pursuant to 16 *Del.C.* Ch. 50 is proper. The purpose of 16 *Del.C.* Ch. 50 was to establish a procedure for compulsory confinement which satisfied the requirements of due process *Cf. O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

Based on the foregoing, an order will be signed for involuntary commitment.